RIESEN and others, Appellants, vs. SCHOOL DISTRICT No. 4
   OF THE VILLAGE OF SHOREWOOD, Respondent.

*March 12—April 6, 1926.*

*Schools: Limitation of indebtedness: Contracts incurring liability
   in excess thereof: Recovery on contract: On quantum meruit.*

1. The consummation of a contract for the erection and repair of
   school buildings constituted an incurring of indebtedness;
   and where the amount thereof, with the existing indebtedness,
   exceeded the limitation fixed by sec. 3, art. XI, Const., no
   cause of action can be maintained on the contract.  p. 611.
2. Such a contract is in violation of law to the extent of the ex-
   cess, precluding a recovery thereunder on *quantum meruit.*
   p. 612.
3. A school district cannot ratify or adopt a contract for the erec-
   tion of school buildings which creates an indebtedness in ex-
   cess of the constitutional limitation.  p. 613.
4. *Quære,* whether the electors of the district, solely in recogni-
   tion of their moral obligation to pay for the school building,
   may, by appropriate action at a time when there will be no
   violation of the limitation of indebtedness provision, com-
   pensate the plaintiff contractors?  p. 614.

APPEAL from an order of the circuit court for Milwau-
kee county: OTTO H. BREIDENBACH, Circuit Judge.  *Af-
firmed.*

The complaint alleges eight separate causes of action, each
and all being for the recovery of the contract price for serv-
ices rendered and materials furnished in and about the erec-
tion and construction, repair, and remodeling of various
buildings belonging to the school district.  The allegations
of each cause of action are similar, the points of law pre-
sented are identical, and it will be sufficient for the purposes
of this case to deal only with the first cause of action, as
a decision upon that cause of action must govern the decision
with reference to all others.

That cause of action alleges that the plaintiffs are co-
partners engaged in the general contracting business in the
city of Milwaukee; that the defendant is a duly organized

school district; that at a lawful and regularly called annual and adjourned meeting of the electors of said district for the years 1922, 1923, and 1924 the district board was authorized and directed to enter into contracts for the erection, construction, and equipment of various school buildings for said school district and, more particularly, a high school and manual arts building, and to borrow various sums of money to pay therefor, and duly voted a tax for said purpose; that in accordance with said directions the plaintiffs and the school board, on the 14th day of May, 1924, entered into a contract by which the plaintiffs agreed to furnish all work, labor, and material in and about the construction, erection, and equipment of a high school for said school district at the agreed price of $212,090; that all of the electors and taxpayers of said school district were well advised and informed of the consummation of said contract and of the progress of the erection of said high school building; that the defendant school district agreed to make payments on account thereof as follows, to wit: payments to be made on certificates issued by architects depending upon progress of work done as estimated by the plaintiff contractors and verified by architects, final payment to be made thirty days after the completion of the contract and acceptance of the work; that plaintiffs have fully and faithfully complied with all the terms and conditions of said contract; that the said school district has fully accepted all of the work, labor, and materials furnished by the said plaintiffs, and are using, and have used, said high school building continuously since 1925; that all other work, labor, and materials furnished were in accordance with the expressed wishes of a large majority of the electors and property owners of said district as expressed in their various school district meetings duly held in the year 1925; that a balance of $21,510.72 remains unpaid on said contract; that the architects have duly issued their certificates for payment of said unpaid balance; that

on the 2d day of June, 1925, the district board of said defendant school district in good faith accepted and approved of the work and of the payment of said sum of $21,510.72; that at the regular adjourned annual meeting of the electors of said school district held on the 31st day of August, 1925, and at subsequent meetings thereof, the said electors of said school district unanimously accepted and approved of all of the work and labor performed and material furnished by the plaintiffs in the erection of said high school building, and authorized and directed the district director, district treasurer, and district clerk of said school district to make payment of the amount due and vote a tax for said purpose, and authorized a loan therefor.

The answer of the defendant denied information sufficient to form a belief as to whether all of the electors were taxpayers of said defendant school district, or were well advised or informed of the entering into of said contract, or of the progress of the erection of said high school building; admitted that at the regular adjourned annual meeting of the electors of said school district held on the 31st day of August, 1925, and at subsequent meetings thereof, the said electors of said school district accepted and approved all of the work and labor performed and materials furnished by the plaintiffs in the erection of said high school building, and authorized and directed the district treasurer and district clerk of said school district to make payment of the amount due and voted a tax for said purpose and authorized a loan therefor, but said defendant denied that such action as taken was unanimous, and alleged in that behalf that said resolution was adopted by a vote of sixty-nine for it and fourteen against it; alleged that at such time the value of the taxable property in said school district as ascertained by the last assessment for state and county taxes previous to August 31, 1925, was $20,303,695, and that five per cent. thereof is $1,015,184.75, and that the total in-

debtedness of said school district, including that sought to be ratified, did not exceed $1,015,184.75, or five per cent. of the assessed valuation; that on May 14, 1924 (the date of the execution of the contract), the value of the taxable property in said school district as ascertained by the last assessment for state and county taxes previous to May 14, 1924, was $14,765,240 and that five per cent. thereof is $738,262; that when the said contract between the plaintiffs and the defendant was entered into the defendant had incurred a total indebtedness of $542,491.61, and that upon the execution of said contract between plaintiffs and defendant the total indebtedness of the defendant exceeded five per cent. of the taxable property in said school district as ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, by $16,319.61, and as to such sum said contract was void. All other allegations of the complaint were admitted.

The plaintiffs demurred to this answer. The demurrer was overruled, from which order the plaintiffs bring this appeal.

*Alfred Kay* of Milwaukee, for the appellants.

For the respondent there was a brief by *William Kaumheimer,* attorney, and *Leon E. Kaumheimer,* of counsel, both of Milwaukee, and oral argument by *Leon E. Kaumheimer.*

Owen, J. It appears from the answer that prior to the consummation of the contract for the erection of the high school building the constitutional debt limit of the school district was $738,262; that the indebtedness of the school district at that time was $542,491.61; that when the contract for the erection of the high school building was consummated the debt limit was exceeded by $16,319.61. The answer admits that at a regular adjourned annual meeting of the electors of said school district held on the 31st day of August, 1925, the said electors accepted and approved all

of the work and labor performed and materials furnished by the plaintiffs in the erection of said high school building, and authorized and directed the school district officers to make payment of the amount due; voted a tax for said purpose and authorized a loan therefor, and that the amount so authorized to be paid did not exceed the then constitutional debt limit of said school district.

It therefore appears that the indebtedness incurred by the contract (if an indebtedness was incurred by the execution of the contract), together with the then existing indebtedness of the school district, exceeded the constitutional five per cent. debt limit fixed by art. XI, sec. 3, of the state constitution; that the plaintiffs went ahead under the contract and fully erected and constructed the high school building, which building was accepted and approved both by the school district officers and the electors of the school district; that between the time of the execution of the contract and the 31st day of August, 1925, a date subsequent to the completion and acceptance of the building, the value of the taxable property of the district as ascertained by the last assessment for state and county taxes was $20,303,695; that the debt limit, so called, was $1,015,184.75, which exceeded the then existing indebtedness of the school district.

The question presented is whether any recovery can be had on the initial contract, and, if not, whether a recovery may be had upon the action of the school district electors taken at the regular adjourned annual meeting on the 31st day of August, 1925, at which time the building was approved and accepted, the school district officers authorized to pay therefor, and a tax for that purpose voted, it being kept in mind that on that date the amount authorized to be paid did not exceed the constitutional debt limit.

The decisions of this court point clearly and unequivocally to the conclusion that no cause of action may be maintained upon the original contract. The consummation of that con-

tract constituted the incurring of an indebtedness represented by the amount which the school district agreed to pay for the construction and erection of the high school building. The indebtedness was incurred as of that date. *Crogster v. Bayfield County*, 99 Wis. 1, 74 N. W. 635, 77 N. W. 167. Concededly the indebtedness thus incurred, together with the existing indebtedness of the school district, exceeded five per cent. of the then value of the taxable property of said school district as ascertained by the last assessment for state and county taxes. That part of the indebtedness incurred by the contract in excess of the five per cent. limitation was void. *Earles v. Wells*, 94 Wis. 285, 68 N. W. 964; *McGillivray v. Joint School Dist.* 112 Wis. 354, 88 N. W. 310; *Balch v. Beach*, 119 Wis. 77, 95 N. W. 132. And such void indebtedness could not subsequently be ratified. *McGillivray v. Joint School Dist., supra; Balch v. Beach, supra*. These principles are so thoroughly discussed in the cases cited, and the conclusions reached so definite and emphatic, that further elaboration is neither necessary nor justifiable.

It should be stated here that the complaint sets up an alternative cause of action for a recovery upon *quantum meruit*, to recover that portion of the contract price withheld by the school district. That a recovery may not be had upon *quantum meruit* under such circumstances is settled by *McGillivray v. Joint School Dist.* 112 Wis. 354, 88 N. W. 310, where a negative conclusion was clearly and positively announced.

Counsel for appellants cites to our attention numerous cases of this court where it is held that under certain circumstances void municipal contracts may be ratified and recovery may be had on *quantum meruit* or for money had and received. *Paul v. Kenosha*, 22 Wis. 266; *Lafebre v. Board of Education*, 81 Wis. 660, 51 N. W. 952, and *Thomson v. Elton*, 109 Wis. 589, 85 N. W. 425, are illustrative of

such cases. The doctrine of those cases does not extend to contracts expressly prohibited by law. This is emphasized in *Thomson v. Elton, supra,* where it was said by Mr. Justice MARSHALL:

"The principle of those cases is that municipalities are bound by moral obligations, as well as individuals, and that where, in case of the latter, such an obligation will give rise to a legal liability, it may have the same effect as to a municipality; that if a municipality obtains money of a person by an illegal sale of property to him, or an illegal contract of some kind, *not expressly prohibited by law nor tainted by moral turpitude so that court on grounds of public policy will not recognize it, or the relations growing out of it,* to grant relief, and such person acts in good faith in parting with his money, believing the same to be for the benefit of the municipality, and the latter uses the money for its legal and legitimate purposes, to that extent the law will imply a promise to return the same, upon which an action for money had and received will lie."

That principle has no application to the contract here under consideration because that contract, at least that portion of it in excess of the five per cent. limitation, was prohibited by the constitution. To that extent it was a contract in violation of law. Because the district had no power or authority to enter into it in the first instance, it can never ratify or adopt it so as to make it a legal obligation of the school district. Nothing in the nature of a valid obligation against the school district can grow out of that contract so far as that portion of it in excess of the debt limit is concerned. That is a principle firmly established by the cases already cited, and nothing that here may be said can add to the weight of the authority of those decisions.

We may suggest, however, that another and interesting question would be presented were the electors of the school district, solely in recognition of their moral obligation to pay for the school building, to take appropriate action in

that behalf at a time when to do so would not be in violation of the constitutional provision we are considering. That question, however, is not here. The resolution of August 31, 1925, accepted and approved of all the work and labor performed and material furnished by the plaintiffs in the erection of said high school building, and authorized and directed the district director, district treasurer, and district clerk of said school district to make payment of the amount due. It is manifest that the acceptance and approval was of work done, labor performed, and material furnished under the contract, and that the amount authorized to be paid was the amount due under the contract. It was a manifest attempt to ratify and validate the void contract. That cannot be done. But we simply query whether, at a time when the electors of the school district cannot be said to be influenced by the specter of this void contract, and at a time when it is apparent that they are moved by the sole desire to discharge their moral obligations, they may compensate the plaintiffs, to some extent at least, for the improvements which the school district is now enjoying and for which it has paid nothing. So far as we know, this proposition has not been passed upon by any court, and it must be understood that we intimate no opinion with reference thereto.

It follows from what has been said that the answer states a good defense to the first cause of action, and that the demurrer thereto was properly overruled. The same is true with reference to the answer to all of the other causes of action set forth in the complaint. The order appealed from must therefore be affirmed.

*By the Court.*—So ordered.