VILLAGE OF WEST MILWAUKEE and another, Plaintiffs, v. CITY OF WEST ALLIS and others, Defendants. [Two appeals.] *

*May 12—June 10, 1966.*

---

\* Motion for rehearing denied, with costs, on August 16, 1966.

398

For the plaintiffs there was a brief by *Allen J. Busby* and *Quarles, Herriott & Clemons*, attorneys, and *Maxwell H. Herriott, L. C. Hammond, Jr.,* and *John S. Holbrook, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Hammond.*

For the defendants there was a brief and oral argument by *William T. Schmid,* city attorney.

FAIRCHILD, J. *City school plan, secs. 40.80 to 40.827, Stats.* Sec. 40.801 (1) provides that "Each city operating under the city school plan is a single and separate school

district; any territory outside of the city which is joined with city territory in the formation of a school district is attached to the city for school purposes."

Briefly summarizing the provisions of the city school plan, secs. 40.80 to 40.827, Stats., as they relate to ordinary fiscal affairs:

(1) The school affairs are managed by a board of education. Where territory is attached to the city for school purposes, formulae are provided for the composition and selection of the board so that there is representation of electors residing in territory attached to the city for school purposes. The board of education annually prepares an estimate of expense, but does not make the final determination of the amount to be raised by taxation.

(2) In the simple type of city school district, where the territory of the city has not been enlarged for school purposes or where it has been enlarged by some means other than a plan of reorganization under sec. 40.03 or 40.06, Stats., the board of education submits its estimate to the common council. The common council considers it, determines the amount to be raised by taxation and levies the city school tax. Where territory has been attached to the city for school purposes, the city clerk apportions to outside property its proportionate share, and such share is certified to the clerk of the municipality in which the attached territory lies, is entered on the tax roll, collected and returned.

(3) Where the territory of the city has been enlarged for school purposes as a result of a plan of reorganization under sec. 40.03 or 40.06, Stats., the statutes confer certain authority upon a body consisting of the members of the city council (or commission) and the town chairmen and village presidents of the municipalities involved in the reorganization. Voting power is distributed according to a formula on the basis of the equalized valuation of property within the district and within each munic-

ipality. The statutes supply no name to this body. The circuit court has referred to it in the judgment as the "common council" as specially defined. The parties have dubbed it the "fiscal board" and we will use that designation. It is the contention of West Allis, supported by at least some of the statutes, that the "fiscal board" in a district of this type performs functions corresponding to those of the common council in the simpler type of district, in receiving the estimate from the board of education, determining the amount to be raised by taxation, and levying the tax.

In the case of West Allis, the board of education is composed as provided in sec. 40.803 (1) (c) 1, Stats. The fiscal board is composed of the members of the common council of West Allis, the village president of West Milwaukee, and the mayors of Greenfield and New Berlin, with voting power apportioned according to formula. In the past the board of education submitted its estimate to the city clerk, who laid it before the fiscal board, the fiscal board determined and levied the tax, and the city clerk certified the shares to the other municipalities, all as West Allis contends is correct.

Disputes have arisen as to this practice and several others. It is clear that West Milwaukee considers that the interests of its residents and taxpayers have been abused as a result of the fact that the members of the common council of West Allis have a combined voting power of 76 percent, while the village president of West Milwaukee has a minority voice, somewhat less than 24 percent.

### Declaration No. 1.

"Sections 40.807, 40.813, and 40.815, Wis. Stats., grants to the Common Council, as defined in said Sections of the Statutes, the sole power to approve the school budget and levy the general property tax for school purposes throughout the School District, such tax levy being apportioned

throughout the District for collection in the manner provided by Section 40.815, Wis. Stats."

(As previously noted, it is clear from the opinion filed by the circuit court that the "common council" referred to in the foregoing declaration is the same as the "fiscal board," composed as provided in sec. 40.807 (1)–(4), Stats.)

Secs. 40.809 (9), 40.807 (3), Stats., read together with secs. 40.813 (2), and 40.815, clearly support the declaration.

Sec. 40.809 (9), Stats., provides that the board of education may

". . . estimate the expenses of the city schools and prepare a budget; purchase sites for school buildings or other school uses; construct school buildings or additions thereto. Any action under this subsection shall be submitted to the common council for approval, except as provided in s. 40.807."

Sec. 40.807 (3), Stats., provides that the fiscal board

". . . shall have the power to approve the school budget, levy the general property tax for school purposes, and all other fiscal controls now exercised by the city council or commission over city school districts."

Sec. 40.813 (2), Stats., provides:

"The school board shall annually, before October, make an estimate of the expenses of the public schools for the ensuing year, and of the amount which must be raised by city taxation, and shall certify the same to the city clerk who shall lay the same before the common council at its next meeting. The common council shall consider such estimate, and by resolution determine and levy the amount to be raised by city taxation for school purposes for the ensuing year, which amount shall be included in the annual city budget and be called the 'City School Tax.' "

Sec. 40.815, Stats., provides for the apportionment and certification by the clerk of the share of taxes to be borne by property attached for school purposes.

Plaintiffs contend, however, that the fiscal board has only advisory powers with respect to the budget, and that the final authority lies in the governing bodies of the municipalities, acting severally. They rely on sec. 40.813 (3), Stats., which, when read together with sec. 40.813 (2), is open to the construction plaintiffs ascribe to it.

Sec. 40.813 (3), Stats., provides:

"In a city district governed by the board described in s. 40.807 (3) the board shall act as in sub. (2) of this section but shall certify the estimate to the governing bodies of all included municipalities; such bodies shall then levy the amounts as provided in sub. (2)."

This subsection was created by sec. 143 of ch. 90, Laws of 1953, and plaintiffs contend that it repealed sec. 40.807 (3), Stats., by implication because of apparent inconsistency.

There are several reasons why we find no implied repeal. Ch. 90 was "An Act to revise chapters 39 and 40 . . ." and affect other sections "relating to the school laws, for the purpose of rearranging and clarifying those laws." It is true that sec. 143, ch. 90, created sec. 40.813 (3), Stats., but sec. 139 amended sec. 40.807 (3), after giving it its present number, and sec. 140 amended sec. 40.809 (9), after giving it its present number, by adding the last sentence which refers specifically to submitting its action to the common council "except as provided in s. 40.807."

The source of ch. 90 was Bill No. 1, S., introduced by the legislative council. The bill contained notes. A note under the title includes the following: "The meaning of the 1951 statutes revised by this bill is not intended to be changed unless the new language shows clearly an intent to make a change." A note after sec. 140 stated: "New (9) is amended so that governing body of enlarged city district need not secure approval of common council." A note after sec. 143 said: "This new subsection, like

new 40.813 (1), provides a procedure for enlarged city district boards."

Plaintiffs' construction of sec. 40.813 (3), Stats., it seems to us, would produce chaos in the process of budget making for a city school district. No single body would have power to adopt a budget or determine the amount to be raised by taxation. And if so great a change of substance were intended, it is hard to believe that the draftsmen would have explained it simply as providing a "procedure." The legislature specifically dealt in the same chapter with the sections on which West Allis relies, and the notes give no suggestion of an intended change in them in the direction for which plaintiffs contend. The procedure, moreover, for determining and certifying the proportionate share of the levy to each municipality, is already more adequately and specifically covered by sec. 40.815 (2), Stats. Rare as is the appropriate occasion for ignoring statutory language, we find no other disposition for sec. 40.813 (3).

## *Declaration No. 2.*

"Joint City School District No. 1 of the City of West Allis, the Village of West Milwaukee, and the City of Greenfield, in Milwaukee County, and the City of New Berlin, in Waukesha County, has legal authority to establish and maintain in its school buildings and on the school grounds under its custody and management an educational and recreational program, including evening schools, vacation schools, gymnasiums, public playgrounds, and similar activities and accommodations, which educational and recreational program is for children and adult persons over and above the school curriculum prescribed by Section 40.46, Wis. Stats., and the Fiscal Board, consisting of the Village President of the Village of West Milwaukee, the Mayors of the Cities of Greenfield and New Berlin, and the members of the City Council of the City of West Allis, with voting power of each being determined as set forth in Section 40.807 (2), Wis. Stats., may levy a tax on all property in the School District to support said educational and recreational pro-

gram, even though no referendum has ever been conducted in the School District or by the City of West Allis under Section 43.50 (5), Wis. Stats."

Ch. 43, Stats., is entitled "Libraries, Museums, Civic and Community Centres, and Special Uses of Municipal Buildings."

Sec. 43.50, Stats., is entitled "Use of school buildings and grounds for civic purposes." It authorizes boards of school directors in cities of the first, second or third class to establish and maintain various recreational and educational programs for adults and children outside of ordinary school activities. These may be carried on in school buildings and on school grounds, and may also be carried on in other public facilities in cooperation with the municipal bodies having custody of such other facilities.

Sub. (1) authorizes the board of school directors to establish such programs on their own initiative.

Sub. (2) provides for an initiative procedure whereby electors may, by petition and election, require the board to do so.

Sub. (3) provides that the board shall annually determine the amount of money required, and requires the common council to levy a special tax in that amount. Such tax provision, however, is "subject to the provisions of subsection (5)."

Sub. (5) provides as follows:

"The tax provided for in subsection (3) shall not be levied or collected until after the question of the levy and collection of such tax shall have been submitted to the qualified school electors of such city pursuant to law, at some regular or special election, and shall have been favorably voted by a majority of those voting upon such question at such election. After a favorable vote on such question, as provided above, such tax shall be levied and collected annually until the voters of the school district of such city shall, by majority vote, order the discontinuance thereof. The question of such discontinuance shall

be submitted in the manner the question of authorizing the levy and collection of the said tax is required by law to be submitted."

Sub. (6) provides as follows:

"The board may receive and expend for the purposes of this section any sums of money appropriated by the common council of such city for such purposes, and the common council may appropriate from the general or a similar fund to said board such sums of money as said council may deem expedient for the purposes of this section."

The West Allis board of education has established programs of the type referred to in sec. 43.50 (1), Stats. There has been no election in West Allis pursuant to sub. (5) and it follows that the board is not entitled to determine the amount of money required and have the fiscal board (performing the function of the common council) levy a special tax under sub. (3).

The West Allis board of education has, however, included the expenses of the program in the budgets submitted to the fiscal board, and the fiscal board has included amounts for this purpose in its tax levy. A common council has the power under sub. (6) to appropriate money from the general fund at its discretion for the operation of these programs, without a referendum. A fiscal board is not expressly given power to tax in order to raise a general fund. As to a city school district which is the product of a plan of reorganization, however, such fiscal board performs in many respects the function for such city school district which the common council performs for the simpler type of city school district.

We conclude that it is a reasonable construction of sec. 43.50, Stats., to deem it applicable to a city school district which is the product of a plan of reorganization, to treat the references therein to the common council, as including the fiscal board of that type of city school district, and to recognize that the fiscal board has the power to include

in its tax levy sums which it may deem expedient under sub. (6).

*Declaration No. 3.*

"3. The City of West Allis is without authority to charge the School District funds; and the School Board of Education of West Allis is without authority to pay over to the City of West Allis or its Park Board any sum towards maintenance and operation of the parks and areas owned or leased by and located in the City of West Allis where such public parks and areas are not subject to the control of the Board of Education of the School District, are not devoted to the exclusive use of the students attending the School District schools and are utilized by the Board of Education of the School District to conduct a part of its program. This absence of authority is determined to operate prospectively only."

Plaintiffs alleged that in previous years certain sums had been included in the city school district tax levy "for the purpose of financing the park system of West Allis." They sought a declaration that this was unauthorized. West Allis denied that sums were paid to the park board for such purpose.

It does appear that substantial sums were included in the budgets approved and levies made by the fiscal board and were paid to the West Allis park board. The propriety of part of these payments appears not be disputed. West Allis park board employees perform maintenance work on the school grounds. The park board bills the board of education for this work, and part of the payments to the park board cover these billings.

West Allis contends that the balance of the payments made were proper by reason of the following facts:

The board of education conducts part of its recreation program in parks and recreation areas owned by West Allis and operated by the park board. The areas used are not allocated exclusively to the board of education or students attending the schools, but these areas are available for use by the public generally.

West Allis contends that since conduct of board of education programs in park areas requires a greater amount of maintenance than if such use did not take place, the board of education and the fiscal board ought to be entitled to make a reasonable financial arrangement with the park board in order to defray such increased maintenance expense. West Allis appears to contend that the challenged portion of the payments to the park board are justified on this basis. There is no formal agreement between the board of education and the park board.

The circuit court concluded that since there is no statutory authority for transfers of funds for this purpose, and since the park areas involved are not under the exclusive control of the board of education, transfers of funds to the park board for this purpose are unauthorized.

Sec. 40.30 (14), Stats., does (among other things) expressly authorize the board of a city school district, with the approval of the city council (here fiscal board) to enter into agreements with a city or village for maintenance of land and equipment for the operation of a lawful school program.

We do not, however, deem specific statutory authority necessary in order to authorize payment, with the approval of the fiscal board, out of school funds to the park board, of sums which are reasonably equivalent to increased costs imposed upon the park board as a result of the use of park areas for programs carried on by the board of education. We assume that there is a satisfactory way of determining the amount of such costs, and thus of determining the amount of school funds which can be lawfully transferred to the park board on this account.

Presumably the benefits of the programs of the board of education carried on in West Allis parks are available to all residents of the school district, without discrimination. If they are (and there is nothing in this record to show they are not) it would be unfair to impose the re-

sulting extra costs on the taxpayers of the city of West Allis, without compensating payments out of the funds of the entire city school district.

Neither do we consider it essential that particular park areas be set aside exclusively for use under the programs of the board of education, assuming, as we do, that there is a feasible way of determining the approximate amount of the additional costs which the use of these programs imposed upon the park board.

Suppose, for example, that the board of education and fiscal board were to make arrangements with West Milwaukee to use one of the village parks for a board of education recreational program, and make payments to the village for the increased costs which would result to the village. The same principles should apply.

The record in this case does not disclose that the sums transferred are unreasonable in amount. It does not disclose that the advantages which result from the use of the West Allis parks are not really available to all residents of the city school district and that the transfers of funds involve a use of school district funds for strictly city purposes. In the absence of such showing, there can be no declaration that the transfers of money complained of were without authority or constituted an abuse of discretion.

We therefore reverse declaration No. 3. If either or both parties desire declaration on this issue, further proceedings may be had, subject to the discretion reposed in the court in an action for declaratory relief.

### Declaration No. 4.

"Any interest derived from funds held by the Treasurer of the City of West Allis for school purposes accrues to the benefit of all of the territory in Joint City School District No. 1 of the City of West Allis, the Village of West Milwaukee, and the City of Greenfield, in Milwaukee County, and the City of New Berlin, in Waukesha County, and, hence, must be accounted for so as to accrue to the benefit of all of the territory in said School Dis-

trict; and the City of West Allis was and is without authority to expend said monies for general purposes of the City of West Allis, to the exclusion of the school purposes."

The city treasurer of West Allis receives funds for school purposes, such as state school aids and the proceeds of borrowing for school purposes. These come in before they need to be spent, and are invested at interest. The amount of the interest is not credited to accounts of funds for school purposes, and swells general city funds, under the control of the common council.

Plaintiffs contend that such interest ought to be accounted for as school funds and used for the benefit of the city school district as a whole. The circuit court so decided, deeming this a more equitable result since school funds are raised from many taxpayers who are not city taxpayers.

West Allis relies upon *Board of Education v. Racine* [1] holding that where schools are operating under the city school plan the city owns the funds and therefore owns the interest derived therefrom and need not account to the board of education for such interest. This was a contest between the board of education and the common council and the opinion pointed out that under the city school plan the common council has ultimate control of tax and property matters. [2]

Under the statutes then in existence, it was possible for territory to be attached to a city for school purposes only, and hence there could be taxpayers for school purposes who were not taxpayers for city purposes. The forerunner of present sec. 40.807, Stats., however, which provides special fiscal controls for a city school district which is the product of a plan of reorganization under sec. 40.03 or 40.06, Stats., was first enacted by ch. 501, Laws of 1949, in the early days of school reorganization.

[1] (1931), 205 Wis. 489, 238 N. W. 413.
[2] See also *State ex rel. Board of Education v. Racine* (1931), 205 Wis. 389, 236 N. W. 553.

. Under the present statutes, a city like West Allis not only has a wider territory for school purposes than it does for ordinary municipal purposes, but it also has a body with control of tax and fiscal matters (the fiscal board) which is representative of the wider territory and which is different from the body with control of ordinary municipal tax and fiscal matters, the common council. Thus we do not find the *Racine* decision controlling as to a city school district which is the product of a plan of reorganization, and conclude as did the circuit court that it is equitable that interest on school funds should augment the funds under the control of the fiscal board rather than the funds under the control of the common council.

*By the Court.*—Declarations in the judgment numbered 1, 2, and 4 are affirmed. Declaration numbered 3 is reversed, and the cause remanded for further proceedings.

HALLOWS, J., dissents from that part of the opinion which affirms Declaration No. 2.